IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RC MANAGEMENT, INC.,<br>*Plaintiff*<br><br>-vs-<br><br>THIRD COAST INSURANCE COMPANY,<br>*Defendant* | §<br>§<br>§   SA-24-CV-00711-XR<br>§<br>§<br>§<br>§<br>§<br>§ |

## ORDER

On this date the Court considered Defendant Third Coast Insurance Company's Motion for Summary Judgment (ECF No. 23), Plaintiff RC Management Inc.'s Response (ECF No. 30), and Defendant's Response in Support. ECF No. 33. After careful consideration, the Court issues the following order.

## BACKGROUND

Plaintiff RC Management, Inc. seeks coverage for damages to commercial property it owns at 1642 Felix Trevino Way, San Antonio, Texas ("Property") pursuant to a commercial property surplus lines insurance policy ("Policy") it purchased from Defendant Third Coast Insurance Company through third-party insurance broker Acrisure.[1] ECF No. 1-4. The Policy provided coverage from April 1, 2020, to April 1, 2021. ECF No. 23-3 at 2. The Declaration Page notes that Forms and Endorsements listed in the Index of Forms are made part of the Policy at time of issue. ECF No. 23-3 at 3. The Index of Forms includes a "Winsdstorm (Including Hail) Notice of Loss

---

[1] "Surplus lines insurance allows a person who seeks to insure a Texas risk but is unable to obtain that insurance from a Texas-licensed insurer to seek the insurance from an insurer who is not licensed in Texas but is an eligible surplus lines insurer." 44 TEX. JUR. 3d INSURANCE COMPANIES § 60. A "surplus lines insurer" is unauthorized to issue insurance in Texas unless it issues insurance through a surplus lines agent in accordance with Texas law. TEX. INS. CODE § 981.002(4). A "surplus lines agent" is an agent licensed to procure an insurance contract from a surplus lines insurer. TEX. INS. CODE § 981.002(8).

Amendment Endorsement" NC R9 00 10 19 Form ("Endorsement"). *Id*. at 8. The Coverage Declaration Page states in all caps, "READ THE ENTIRE POLICY CAREFULLY, INCLUDING ANY ENDORSEMENTS, TO DETERMINE RIGHTS, DUTIES AND WHAT IS AND IS NOT COVERED." *Id*. at 10. In section S., the Policy identifies the insured's duties in the event of loss or damage, including the duty to "[g]ive the company prompt written notice of the loss or damage" ("Prompt Notice Provision"). *Id*. at 59.

The Policy, including the Prompt Notice Provision, is amended by the aforementioned "Windstorm (Including Hail) Notice of Loss Amendment Endorsement" ("Endorsement") *see id*. at 80 (stating in bold print, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."). The Endorsement provides that for losses "caused by or resulting from Windstorm (including hail)" the Duties in the Event of Loss or Damage is amended and it is "agreed" the following shall apply:

> **In addition to** your obligation to provide us with prompt written notice of loss or damage, with respect to any claim wherein written notice of the claim is reported to us more than one year after the reported date of loss or damage, this Policy shall not provide coverage for such claim.

*Id*. (emphasis added).

Plaintiff alleges that, on May 27, 2020, the Property, known as Park South Village, was damaged as a result of hail and wind during a storm event. ECF No. 1-4 ¶ 6.1. Plaintiff first notified Defendant of alleged damage on April 14, 2022. ECF No. 23-4. Plaintiff acknowledged the claim and sent a reservation of rights letter to the insured that broadly reserved Third Coast's rights under the policy and disavowed any waiver of its rights under the policy.[2] *See* ECF 23-5. On April 28, 2022, Third Coast had engineering consultant, Keystone Experts + Engineers ("Keystone") inspect

---

[2] Plaintiff alleges the letter was dated April 22, 2022, but the letter was not sent (via email) until April 28, 2022. ECF No. 23-5.

the property. ECF 23-5 at 2. On June 6, 2022, Defendant notified the Plaintiff that the inspection of the property found no hail damage from the date of loss, and referencing the engineering report and quoting the late notice endorsement applicable to hail claims among other policy provisions denied the claim. ECF No. 23-6. About a year later, in June 2023, Defendant reinspected the property at Plaintiff's request and again denied coverage—advising that the investigation determined that the damages were not caused by or resulted from a covered cause of loss under the policy. ECF No 23-7. Then Plaintiff then retained a roof service company to investigate and provide an estimate regarding the damages sustained to the Property. The roof service company determined that the damage to the Property was caused by the storm and was more significant than the damage found by the Defendant's engineer. ECF No. 30-3. Plaintiff contends that it sent the Defendant a Notice of Claims on July 21, 2023. ECF No. 1-4 ¶ 6.7.

On February 16, 2024, RC Management initiated this action in the 57th Judicial District Court of Bexar County, Texas against Third Coast Insurance for breach of contract and violation of the Texas Deceptive Trade Practices Act and the Texas Insurance Code. *See* ECF No. 1-4. Plaintiff served Defendant with its Original Petition through the Texas Commissioner of Insurance on March 11, 2024; however, the Commissioner of Insurance did not provide actual notice to Defendant until June 1, 2024. ECF No. 1-13; 31 ¶ 3. Third Coast Insurance removed the case in June 2024 on the basis of diversity jurisdiction. ECF No. 1. RC Management filed an amended complaint on October 15, 2024. ECF No. 18. Third Coast now moves for summary judgment, arguing that Plaintiff's breach of contract claim fails as a matter of law because Plaintiff failed to report its loss within one year of the date of loss as required by the policy. ECF No. 23 at 1, 7. Defendant further argues that, because no breach of contract claim exists as a matter of law,

3

Plaintiff's extracontractual claims also fail. *Id*. at 12. Plaintiff filed a response in opposition (ECF No. 30) and Defendant filed a reply. ECF No. 33.

## DISCUSSION

### I. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical

evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Analysis

### A. Legal Principles for Insurance Policy Interpretation

"If, in a diversity case, the court is required to construe an insurance contract, the federal court will apply applicable state law." *Maryland Cas. Co. v. Williams*, 377 F.2d 389, 392 (5th Cir. 1967) (citing *Ruhlin v. New York Life Ins. Co.*, 304 U.S. 202 (1938). "In Texas, insurance policies are contracts subject to the rules of contract construction." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (citing *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000)). The essential elements of a breach of contract action in Texas are: "'(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained

by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). "Texas law 'places the burden of establishing coverage upon the insured [and] the burden of establishing an exclusion upon the insurer.'" *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018) (quoting *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262, 265 (5th Cir. 2009)). "Effectuating the parties' expressed intent is [the] primary concern." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008) (citation omitted).

### B. Late Notice Endorsement – Condition Precedent to Coverage

Third Coast argues that RC Management's breach of contract claim fails as a matter of law because Plaintiff failed to comply with the one-year notice provision in the insurance policy. ECF No. 23 at 7. Specifically, Defendant argues that the late notice provision is a condition precedent for coverage under the insurance policy; since Plaintiff failed to comply with the late notice provision, Defendant asserts, coverage under the insurance policy is void and no contractual duty to provide coverage is owed to Plaintiff for property damages allegedly caused by a hailstorm on May 27, 2020.

Under Texas law, "[a] condition precedent is 'an event that must happen or be performed before a right can accrue to enforce an obligation.'" *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 500 (5th Cir. 2018) (quoting *Associated Indem. Corp. v. CAT Cont., Inc.*, 964 S.W.2d 276, 283 (Tex. 1998)). "Texas courts interpret insurance policy notice requirements as conditions precedent to coverage." *Flores v. Allstate Tex. Lloyd's Co.*, 278 F. Supp. 2d 810, 815 (S.D. Tex. 2003) (collecting cases). Courts give policy language "its ordinary and generally accepted meaning unless the policy shows that the words used are intended to impart a technical

6

or different meaning." *Am. Mfrs. Mut. Ins. Co. v. Shaefer*, 124 S.W.3d 154, 157 (Tex. 2003) (citation omitted). Here, the Policy expressly labels the Prompt Notice Provision as a "condition precedent." ECF No. 23-3 at 59. The Prompt Notice Provision, as amended by the Endorsement, limits coverage to notification of claims reported within one year of the reported date of loss or damage but otherwise keeps all other terms and conditions of the Policy the same. ECF No. 23-3 at 80. Accordingly, the Court finds that the Prompt Notice Provision, as amended by the Endorsement, is a condition precedent for coverage.

### C. Prejudice Requirement

Third Coast relies on two uncontested facts for its argument that summary judgment can be granted on Plaintiff's breach of contract claim. First, the Prompt Notice Provision as amended requires Plaintiff to provide prompt written notice of loss or damage and provides that the Policy "shall not provide coverage" for a claim reported more than one year after the reported date of loss or damage. ECF No. 23-3 at 59, 80. Second, RC Management failed to submit a claim for damages until April 14, 2022, citing a date of loss of May 27, 2020. ECF No. 23-4 at 1–5.

Plaintiff asserts that Texas courts require a showing of prejudice to deny coverage under the late notice provision. The issue before the Court is whether, under Texas law, an insurer must show prejudice to deny coverage based on an insured's failure to comply with a condition precedent in an insurance contract that establishes a specific time limit for the insured to give notice of a claim. This precise issue has not been decided by Fifth Circuit or the Texas Supreme Court; nonetheless, several cases are instructive.

1. *Matador*

Traditionally, courts have distinguished the impact of untimely notice depending on the type of policy at issue—i.e., whether a policy was a claims-made policy[3] or an occurrence policy[4]—finding the former required a showing of prejudice while the latter did not. In *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir. 1999), the Fifth Circuit observed that Texas courts do not always require an insurer to show prejudice to deny coverage when the insured fails to comply with a notice provision in an endorsement. "Instead, the impact that untimely notice has on coverage depends on the type of insurance policy." *Id*. For instance, whereas "[c]ourts have not permitted insurance companies to deny coverage on the basis of untimely notice under an 'occurrence' policy unless the company shows actual prejudice from the delay[,] . . . an insurance company may deny coverage under a 'claims-made' policy without a showing of prejudice." *Id*. at 658–59. "The fact that courts strictly enforce notice requirements in 'claims-made' policies, but take a distinct approach toward notice requirements in 'occurrence' policies," the Fifth Circuit explained, "reflects a difference in the nature of the bargain underlying each type of policy." *Id*. at 659. In other words, "[c]ourts interpret notice provisions in 'claims-made' policies strictly because in these types of policies, unlike in 'occurrence' policies, the insured and insurer specifically negotiate the terms of the notice provisions." *Id*. Thus, to determine whether the insurer needed to show prejudice to deny coverage, the Fifth Circuit determined a court must look "to the nature of the bargain underlying [the parties'] agreement." *Id*. Noting that the policy at issue was a contract between "sophisticated commercial parties" (*id*.), the Circuit court found that "under the plain language of the endorsement, timely reporting of the claim constituted one of the events necessary to trigger coverage" (*id*. at 660), and reasoned that an

---

[3] A claims-made policy provides coverage when a claim is made against the insured during the policy period, regardless of when the wrongful act giving rise to the claim took place. *www.irmi.com/glossary*
[4] An occurrence policy provides coverage arising out of damage or injury occurring during the policy period, regardless of when claims are made. *www.irmi.com/glossary*.

extension of the notice period "would expand [the] coverage and would expose [the insurer] to a risk broader than the risk expressly insured against in the policy." *Id*. at 659. The Fifth Circuit declined to overlook the plain language of the limitations, stating the plaintiff "received what it bargained for under the endorsement, with premiums presumably reduced to reflect the limited coverage" and whether the insurer suffered prejudice as a result of the late notice was irrelevant. *See id*. at 660.

   2.  *Starr*

After *Matador*, "courts and several major treatises have acknowledged Texas as a state that has adopted a notice-prejudice rule." *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 634 (Tex. 2008). For example, in *PAJ*, the Texas Supreme Court, considering a notice provision in an "occurrence" policy, held "that an insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay." *Id*. at 636–37. *In Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, the Texas Supreme Court held that, "[i]n a claims-made policy, when an insured notifies its insurer of a claim within the policy term or other reporting period that the policy specifies, the insured's failure to provide notice 'as soon as practicable' will not defeat coverage in the absence of prejudice to the insurer." 288 S.W.3d 374, 382–83 (Tex. 2009). However, despite the "modern trend in favor of requiring proof of prejudice[,]" *Hanson Production Co. v. Americas, Ins. Co.*, 108 F.3d 627, 631 (5th Cir. 1997), the Fifth Circuit affirmed that "*PAJ* and *Prodigy* do not disturb the holding in *Matador*," *Starr Indem. & Liability Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700, 704 (5th Cir. 2013).

In *Starr*, the parties entered into an insurance policy agreement that "contained an absolute pollution exclusion clause, which freed the insurer of 'liability or expense arising . . . directly or indirectly in consequence of' the release or escape of pollutants and toxic chemicals.'" 719 F.3d

9

at 701. The parties then amended their original insurance policy agreement by replacing the absolute pollution clause with a "buy-back" provision that allowed the insured to seek coverage for the release of pollution if the insured submitted a claim for coverage within thirty days of discovering the release of pollution. *Id*. The insured, however, had failed to submit the disputed claim within thirty days of discovering the release. *Id*. at 703. On these facts, the Fifth Circuit determined that the insurer did not need to show prejudice to deny coverage. *Id*. As it did in *Matador*, the circuit court found that requiring proof of prejudice depends on whether the notice provision at issue "was 'an essential part of the bargained-for exchange' under the policy." *Id*. at 704 (quoting *Prodigy*, 288 S.W.3d at 375): *see also PAJ*, 243 S.W.3d at 636 ("[T]he timely notice provision was not an essential part of the bargained-for exchange under PAJ's occurrence-based policy"). The Fifth Circuit explained that a notice provision is an essential part of the bargained-for exchange if it is "a specific provision negotiated by two sophisticated commercial parties in order to supplement the main insurance policy." *Starr*, 719 F.3d at 703. "In [*Starr*], as in *Matador*," the Fifth Circuit reasoned, "we are dealing with a specific endorsement, separately negotiated by the parties, and with a clear notice requirement." *Id*. at 704. The *Starr* Court therefore held that the insurer "was justified in denying coverage under the specific terms of the buy-back provision which the parties had negotiated to replace the original pollution exclusion." *Id*. at 703. Thus, Fifth Circuit precedent applying Texas law indicates that the appropriate inquiry is whether the notice provision is an essential part of the bargained-for exchange. *See Advanced Seismic Tech., Inc. v. M/V Fortitude*, 326 F. Supp. 3d 330, 336 n.7 (S.D. Tex 2018) (quoting *Starr*, 719 F.3d at 703) ("In the insurance policy context, a showing of prejudice may be required to avoid coverage based on the insured's failure to comply with a notice provision . . . unless the notice provision 'was an

10

essential part of the bargained-for exchange because it was a specific provision negotiated by two sophisticated commercial parties.'").

3. *Blanco*

In *Blanco West Properties, L.L.C. v. Arch Specialty Ins. Co.*, the Fifth Circuit considered whether "an insurance company must show that it has been prejudiced by an insured's failure to file a claim within the express reporting period specified by an endorsement to the insurance contract before it can deny coverage for the claim." 773 F. App'x 795 (5th Cir. 2019). Noting a "significant distinction" between the notice provision in *Blanco*, which required notice within a specific time frame, and notice provisions that required "prompt" or "as soon as practicable" notice, the Fifth Circuit affirmed the district court's order granting summary judgment to the defendant thereby enforcing the endorsement according to its clear and unambiguous terms.[5] *Id*. at 796.

Here, like in *Blanco*, the one-year notice provision is contained in a separate Endorsement agreed to by both parties. Like the district court in *Blanco*, this Court recognizes that "[t]he inclusion of the one-year notice requirement in a separate Endorsement, to which both parties 'agreed,' indicates strongly that the specific time requirement for notice is an essential term of the parties' insurance contract." *Blanco West Properties, LLC*, v. *Arch Specialty Ins. Co.*, No. H-18-0897, 2018 WL 6573117, at *1, (S.D. Tex. Oct. 5, 2018).

4. Other Cases

In *Housing & Cmty. Servs., Inc. v. Texas Windstorm Ins. Ass'n*, 515 S.W.3d 906 (Tex. Ct. App.—Corpus Christi-Edinburg 2017, no pet.), a Texas Appeals Court considered the prejudice

---

[5] The *Blanco* opinion is unpublished. According to Fifth Circuit Rule 47.5.4, an unpublished opinion issued after January 1, 1996, is not precedent, but may be persuasive. The Court finds *Blanco* persuasive, and, thus, applicable to the present case. 5TH CIR. R. 47.5.4 (stating "unpublished opinions . . . may be persuasive").

requirement for a wind and hailstorm policy. The Court determined that the defendant Texas Windstorm Insurance Association ("TWIA") was not required to show prejudice from an insured's failure to comply with a statutory one-year notice provision for TWIA policies. *See id*. at 910. Although the case involved a statutory one-year notice requirement, rather than one agreed to by the parties, the ruling supports the distinction that Texas courts apply between a "as soon as practicable" or "prompt notice" requirement and a provision requiring notice within a specific time.

The Fifth Circuit, in cases involving insurance claims for property damage occurring during a hailstorm, has required that an insurer demonstrate prejudice from the insured's failure to comply with the "prompt notice," "as soon as possible," and "as soon as practicable" requirements in insurance polices. *See e.g., Hamilton Prop. v. Am. Ins. Co.*, 643 F. App'x 437 (5th Cir. 2016) (general policy requirement that the insured provide "prompt notice" of any claims); *Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73 (5th Cir. 2015) (general policy requirement to provide "prompt notice" of loss or damage and to provide description of how the damage occurred "as soon as possible"). These cases involved policy provisions that required "prompt notice" of loss or damage as opposed to notice within a specific time. Apart from the Fifth Circuit's unpublished *Blanco* opinion (discussed above), the parties have not cited any Fifth Circuit case imposing the prejudice requirement on a fixed time, notice provision, much less a requirement specifically set forth in an endorsement.

More recently, in *444 Utopia Lane, LLC v. Peleus Ins. Co.*, this Court considered a motion for summary judgment which contained a notice provision requiring notice of claims within 365 days of the policy's end. No. 5:20-CV-00716-XR, 2021 WL 8442023 (W.D. Tex. Sept. 9, 2021). In denying the defendant's motion for summary judgment, this Court distinguished the notice

provision in *444 Utopia Lane* from the notice provision in *Blanco*, noting the 365-day notice provision in *444 Utopia Lane* term was included in the parties' original insurance policy (2021 WL 8442023, at *8) whereas the notice provision in *Blanco* was contained in an endorsement, agreed to by both parties, that amended the prompt notice provision included in the policy.

### D. Plaintiff's breach of contract claim fails

Although *Blanco* may suggest that the specificity of a notice provision in an insurance policy is perhaps relevant, *Blanco* and Fifth Circuit precedent convey that the more significant question is whether the notice provision constitutes an essential component of the bargained-for-exchange. In *Blanco*, the one-year notice provision was part of an endorsement mutually agreed upon by both parties. *Blanco*, 2018 WL 6573117, at *4. The district court observed that the inclusion of the one-year notice requirement in a separate endorsement, to which both parties 'agreed,' strongly suggests that the specific time requirement for notice is a fundamental term of the insurance contract. *Id*. at *1. Similar to *Matador* and *Blanco*, the parties involved here are sophisticated commercial entities. The unambiguous language of the Endorsement amends the Prompt Notice Provision in the Policy. The Endorsement here, like those in *Matador* and *Blanco*, states that reporting the claim to the insured within one year is necessary to trigger coverage. Unlike "as soon as practicable" or "prompt notice" provisions, the Endorsement's one-year notice provision establishes a specific deadline for notice.

This Court, in line with the Fifth Circuit's decisions in *Matador* and *Blanco*, will honor the plain language of the one-year notice provision, a condition for coverage that the Plaintiff specifically agreed to accept. *See* Notice of Loss Amendment Endorsement ("It is agreed that for loss or damage . . . caused by or resulting from Windstorm (including hail) the following [one-year notice provision] shall apply." ECF No. 23-3 at 80. RC Management provided notice of loss

13

to Third Coast more than one year after the May 2020 storm; accordingly; the Policy does not provide coverage for RC Management's claims.

The Court declines to modify the parties' contract to impose a prejudice requirement in this case and as a result Third Coast is entitled to summary judgment on the breach of contract claim.

### E. Extra-Contractual Claims

"When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive." *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *see also USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (to prevail in a claim under the Texas Prompt-Payment Statute, a plaintiff must first establish a valid claim under an insurance policy). An exception to the general rule exists where the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim," or fails "to timely investigate the insured's claim." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). Plaintiff has not alleged facts that would support this exception. Therefore, Defendant is entitled to summary judgment on the extra-contractual claims.

### F. Waiver and Estoppel

RC Management argues that Third Coast has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in the Policy. Specifically, RC Management argues that Defendant's no-coverage defense based on the policy endorsement that requires a notice of loss be reported within one-year from the date of loss is barred by § 2301.010(d) of the Texas Insurance Code. Plaintiff asserts in its amended complaint that the Notice Endorsement is void unless it strictly complies with the terms of § 2301.010 which

provides that a Party must be allowed to file a claim after the first anniversary of the date of the loss where good cause is shown by the party filing the claim. ECF No. 18 at 2.

The insurance policy at issue is a Surplus Lines Insurance Policy. *See* ECF No. 33-2. Surplus Lines Insurance is governed by Section 981 of the Texas Insurance Code. Under Section 981, domestic surplus lines insurers are not subject to chapter 2301 of the Texas Insurance Code. Tex. Ins. Code Ann. § 981.073(b)(8) (West). Accordingly, Section 2301 is inapplicable in this case and the result is that Plaintiff's waiver and estoppel arguments fail.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (ECF No. 23) is hereby **GRANTED**.

The Clerk is **DIRECTED** to **CLOSE** this case.

The Court will issue a separate Final Judgment.

It is so **ORDERED**.

**SIGNED** this 11th day of June, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE